IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE | ) | 2:11-cv-00916-GEB-EFB |
| | ) | |
| LYNDA ROCHELLE ZIVIELLO-HOWELL and BRENDA TROYLENE ZIVIELLO-HOWELL, | ) | BK Case No. 11-22706-a-7 |
| | ) | |
| | ) | ORDER DENYING DEBTORS' MOTION |
| Debtors. | ) | TO WITHDRAW THE REFERENCE |
| _____ | ) | |

Debtors Lynda Rochelle Ziviello-Howell and Brenda Troylene Ziviello-Howell ("Debtors") move under 28 U.S.C. § 157(d) for an order withdrawing the reference to the bankruptcy court of the United States Trustee's ("Trustee") dismissal motion. (Mot. to Withdraw Reference ("Mot.") 1:25-27.) Debtors argue this withdrawal is required because the Trustee's motion is based on the Defense of Marriage Act ("DOMA"), prescribed in 1 U.S.C. § 7, which Debtors contend "is unconstitutional as applied to [them] because it violates the Equal Protection Principles embodied in the 5th Amendment of the U.S. Constitution." Id. 1:28-2:2. Debtors also argue since "[t]he decision on whether to grant the [Trustee's dismissal motion] will be based on the determination of substantial and material questions of federal law[,]" the reference should be withdrawn. Id. 2:2-5. The Trustee filed a response to Debtors' motion in which the Trustee states it has no objection "to permissive withdrawal of the reference in this case." (Resp. 2:14-15.)

## I.  BACKGROUND

Debtors are a same-sex couple who were legally married in California on June 17, 2008. (Mot. 2:9-11, Ex. 1.) Debtors filed a joint voluntary Chapter 7 bankruptcy petition on February 2, 2011. Id. 2:12. On March 18, 2011, the Trustee filed a motion to dismiss the Debtors' bankruptcy petition, arguing Debtors' "joint filing was not appropriate in light of the Defense of Marriage Act, 1 U.S.C. § 7." (Resp. 2:3-5.) Debtors then filed a motion in the district court to withdraw the reference of the Trustee's dismissal motion.

## II.  DISCUSSION

The district court's authority to withdraw a reference to the bankruptcy court is codified in 28 U.S.C. § 157(d), which prescribes:

> The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] . . ., on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceedings requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The first sentence in § 157(d) provides a district court with permissive authority to withdraw a reference "for cause shown." The second sentence requires withdrawal of a reference if the district court "determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities *affecting interstate commerce*." 28 U.S.C. § 157(d) (emphasis added). "The burden of demonstrating both mandatory and discretionary withdrawal is on the movant." In re Creekside Vineyards, Inc., No. CIV 2:09-2273 WBS EFB, 2009 WL 3378989, at *3 (E.D. Cal. Oct. 19, 2009) (citation and internal quotation marks omitted); accord Stratton v.

2

Garcia, No. CIV-F-06-1495 AWI, 2007 WL 512506, at *1 (E.D. Cal. Feb. 12, 2007).

## A.  Mandatory Withdrawal

Debtors argue, *inter alia*, that withdrawal of the reference is mandatory because the Trustee's dismissal motion concerns a matter "affecting interstate commerce because . . . DOMA itself affect[s] interstate commerce, [and] its . . . intended purpose was to affect interstate commerce." Id. 11:3-5. Debtors argue that the House Judiciary Report on DOMA supports their argument since it demonstrates that "one of the . . . motivating factors contributing to the passage of DOMA . . . was to [e]nsure that in the event states were to issue marriage licenses to same-sex couples[,] . . . other states would not have to honor them." Id. 11: 5-7. However, the portion of the House Judiciary Report on which the Debtors rely discusses what eventually became "Section 2 of DOMA (28 U.S.C. § 1738C), which, in effect, indicates that no state is *required* to give full faith and credit to another state's determination that 'a relationship between persons of the same sex . . . is treated as marriage.'" Smelt v. County of Orange, 447 F.3d 673, 683 (9th Cir. 2006); see H.R. REP. No. 104-664, 6-10 (1996) (explaining "the interstate implications" that a state's decision to recognize homosexual marriage might have on other states). The House Judiciary Report neither discusses DOMA's affect on interstate commerce, nor whether DOMA was intended to affect interstate commerce. H.R. REP. No. 104-664 (1996).

DOMA prescribes: "In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as

husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." 1 U.S.C. § 7. Congress did not make an explicit jurisdictional statement in DOMA concerning under what authority its enactment of DOMA was based, and the United States previously argued in Massachusetts v. U.S. Dep't of Health and Human Servs., 698 F. Supp. 2d 234, 247 (D. Mass. 2010), that "DOMA is grounded in the Spending Clause of the Constitution" and "is plainly within Congress' authority under the Spending Clause to determine how money is best spent to promote the 'general welfare' of the public."

The issue to be decided is whether DOMA regulates activities "affecting interstate commerce" within the meaning of § 157(d). "Congress in § 157(d)'s mandatory withdrawal provision requires district courts to withdraw the reference only for those cases involving the interpretation of federal laws 'regulating organizations or activities affecting interstate commerce.'" In re Roman Catholic Bishop of San Diego, No. 07cv1355-IEG(RBB), 2007 WL 2406899, at *1 (S.D. Cal. Aug. 20, 2007) (quoting 28 U.S.C. § 157(d)). "Although the language 'activities affecting interstate commerce' is very broad, the legislative history shows that this language is to be construed narrowly." Blackman v. Seton, 55 B.R. 437, 446 (Bankr. D.D.C. 1985); accord U.S. v. Ilco, Inc., 48 B.R. 1016, 1020 (N.D. Ala. 1985). Other courts have construed the clause "affecting interstate commerce" in § 157(d)'s mandatory withdrawal provision to mean the federal law on which withdrawal is based must be "rooted in interstate commerce" or enacted under the Commerce Clause. See, e.g., U.S. v. One Parcel of Real Prop., Commonly Known as Star Route Box 1328, Glenwood, Washington Cty., Oreg., 137 B.R. 802, 805 (D. Or. 1992) (indicating forfeiture statutes "are laws regulating organizations or activities affecting interstate commerce

within the terms of § 157(d)" since "[i]n enacting the forfeiture statutes, Congress relied on its powers under the Commerce Clause, making a specific finding in 21 U.S.C. § 801 that trafficking in illegal narcotics affects interstate commerce"); In re Horizon Air, Inc., 156 B.R. 369, 374 (N.D.N.Y. 1993) (stating "the Federal Aviation Act and its regulations are rooted in the commerce clause and are the type of laws that Congress intended to have decided by Article III judges when it enacted the mandatory with[drawal] provision"); U.S. v. Delfasco, Inc., 409 B.R. 704, 707 (D. Del. 2009) ("[E]nvironmental statutes and regulations such as RCRA are rooted in the commerce clause" and are therefore subject to mandatory withdrawal. (citation and internal quotation marks omitted)); see also Erich D. Andersen, Closing the Escape Hatch in the Mandatary Withdrawal Provision of 28 U.S.C. § 157(d), 36 UCLA L. REV. 417, 435 (1988) (arguing "Congress . . . intended the . . . phrase 'affecting interstate commerce' to refer simply to federal laws passed under the commerce clause"). These courts interpretation of the clause "affecting interstate commerce" is persuasive.

Since Debtors have not shown that DOMA is "rooted in interstate commerce" or was enacted under the Commerce Clause, they fail to establish that the Trustee's dismissal motion "come[s] within the narrow confines of § 157(d)['s]" mandatory withdrawal provision. In re Creekside Vineyards, Inc., 2009 WL 3378989, at *5. Therefore, Debtors have not shown that mandatory withdrawal of the reference of the Trustee's dismissal motion is required.

## B. Permissive Withdrawal

Debtors also argue "sufficient cause is shown" justifying permissive withdrawal "because resolution [of] the [dismissal motion]

will require substantial and material consideration of . . . the
constitutionality of DOMA as applied to the Debtors." (Mot. 11:22-25.)
Debtors further argue that "granting . . . the Motion . . . would be the
most efficient use of judicial resources because as of now there is much
uncertainty in regard to the constitutionality of DOMA[.]" Id. 12:19-22.

The permissive withdrawal provision of § 157(d) "provides that
the reference may be withdrawn in the exercise of the district court's
discretion 'for cause shown.'" In re First Alliance Mortg. Co., 282 B.R.
894, 901 (C.D. Cal. 2001). In determining whether "cause" for permissive
withdrawal exists, "a district court should consider the efficient use
of judicial resources, delay and cost to the parties, uniformity of
bankruptcy administration, the prevention of forum shopping, and other
related factors." Security Farms v. Int'l Bhd. of Teamsters, Chauffeurs,
Warehousemen & Helpers, 124 F.3d 999, 1008 (9th Cir. 1997). Further,
"[a] district court considering whether to [grant permissive]
withdraw[al] . . . should first evaluate whether the claim is [a] core
or non-core [proceeding under the bankruptcy code], since it is upon
this issue that questions of efficiency and uniformity will turn." In re
Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993); accord In re
Creekside, 2009 WL 3378989, at *6; In re Daewoo Motor Am., Inc., 302
B.R. 308, 311 (C.D. Cal. 2003) (stating that "it is helpful to make the
core/non-core determination before considering the other factors because
this determination implicates the efficiency and uniformity factors").

Debtors have failed to address whether withdrawal of the
reference will promote the efficient use of judicial resources, prevent
delay and cost to the parties, concerns a core or non-core proceeding
under the bankruptcy code, and/or whether it will affect the uniformity
of bankruptcy administration. The focus of Debtors' argument is their

conclusion that resolution of the Trustee's dismissal motion requires analysis of substantial and material questions of federal law; however, "permissive withdrawal does not hinge on the presence of substantial and material questions of federal law." <u>Security Farms</u>, 124 F.3d at 1008 n.4. Since Debtors have not shown sufficient cause to justify granting their motion to withdrawal the reference under the permissive withdrawal provision of the statute, their motion is also denied on this ground.

**III.   CONCLUSION**

For the stated reasons, Debtors' motion to withdraw the reference of the Trustee's dismissal motion to the bankruptcy court is DENIED.

Dated:  May 27, 2011

_____
GARLAND E. BURRELL, JR.
United States District Judge